IN THE MATTER OF THE ESTATE OF JOHANNA S. ANDERSON, DECEASED.
NIMROD A. JOHNSON v. MINNIE A. KISTLER, AS ADMINISTRATRIX.[1]

November 30, 1923.

No. 23,558.

**Presumption that support of parent by son in law is not to be paid for.**
1. Where a parent becomes a member of the family of a son in law, it is presumed that no pecuniary compensation is to be made for services performed or support furnished.

**Presumption overcome by proof that parties understood payment was to be made.**
2. To overcome this presumption it must appear that when the services were performed, or the support was furnished, both parties understood that compensation was to be made therefor.

**Evidence does not prove such understanding.**
3. The evidence will not sustain a finding that the parties understood that payment was to be made for the support furnished in the present case.

From an order of the probate court for Hennepin county allowing the claim of Nimrod A. Johnson for $3,750.05 against the estate of decedent, the administratrix of the estate appealed to the district court for that county, where the appeal was heard by Montgomery, J., who at the close of the testimony denied a motion for a directed verdict for the administratrix and a motion for a verdict of a specific amount on the counterclaim, and a jury which returned a verdict for $3,940.82. Defendant's motion for judgment notwithstanding the verdict or for a new trial was denied. From the judgment entered pursuant to the verdict, the administratrix appealed. Reversed.

*Mead & Bryngelson*, for appellant.

*G. A. Petri*, for respondent.

[1]Reported in 197 N. W. 671.

TAYLOR, C.

This is an appeal by the administratrix of the estate of Johanna S. Anderson, deceased, from a judgment of the district court allowing the claim of Nimrod A. Johnson for board, lodging and maintenance furnished the deceased during her lifetime.

The important question presented is whether the evidence is sufficient to sustain the verdict. Johanna S. Anderson was the widow and sole legatee of J. W. Anderson, who died in 1892 leaving her sufficient property for her comfortable maintenance. They had two daughters, Minnie A. Kistler, wife of Dr. J. M. Kistler, and Dora Anderson, 8 years of age when her father died. Minnie lived with her husband in a home of their own. Dora lived with her mother in the old home until 1909, when she married Dr. Nimrod A. Johnson and they established a home of their own. About two months later Mrs. Anderson sold her home and from that time until August, 1918, lived with Dora and her husband in their home. When she went to live with them she was about 70 years of age and had sustained an injury to her hip which compelled her to use crutches in moving about, but otherwise was strong and healthy. In the early part of 1918, she began to fail both mentally and physically and became bedridden. In August, 1918, she was taken to the Kistler home where she remained for about 6 months. She was then taken back to the Johnson home where she remained for about 6 months. She was then again taken to the Kistler home where she remained until her death in April, 1920. From the time she was first taken to the Kistler home until her death a nurse was employed to care for her. Prior to that time she had been cared for by Dora. Her mind failed and Minnie was appointed guardian of her person and property and paid the salary of the nurse out of the funds that came into her hands as such guardian. Mrs. Anderson died intestate leaving an estate valued between $15,000 and $16,000. Minnie and Dora are her only heirs. Minnie was appointed administratrix of the estate.

Dr. Johnson filed a claim against the estate for care and support furnished Mrs. Anderson for 9 years and 3 months at $50 per month, and for 5½ months at $75 per month. The charge for this last per-

iod included the board of the nurse. The total charge, including interest, amounted to .the sum of $6,295.50, from which he deducted the sum of $2,545.45, the balance due on a promissory note which she held against him, leaving a balance claimed of $3,750.05. It was admitted that if he was entitled to compensation for the support furnished, the amount claimed was reasonable.

Where relatives live together as members of the same household, it is presumed that no pecuniary compensation is expected or will be paid for services rendered or support furnished by one member to another; and this presumption applies where a parent lives in the family of a son in law or daughter in law, or a child in the family of a father in law or mother in law. Schmidt's Estate, 93 Wis. 120, 67 N. W. 37; Heinz v. Jacobi, 76 N. J. Law, 189, 68 Atl. 1069; Harris v. Harris, 106 Mich. 246, 64 N. W. 15; Cauble v. Ryman, Admr. 26 Ind. 207; Van Sandt v. Cramer, 60 Iowa, 424, 15 N. W. 259; Young's Estate, 148 Pa. 575, 24 Atl. 124; Callahan v. Wood, 118 N. C. 752, 24 S. E. 542; Poole v. Baggett, 110 Ga. 822, 36 S. E. 86; Sprague v. Waldo, 38 Vt. 139; Ginders v. Ginders, 21 Ill. App. 522; Baxter v. Gale, 74 Minn. 36, 76 N. W. 954.

Mrs. Anderson lived in the Johnson home as a member . of the family for more than 9 years. There was no express contract to pay for her care or maintenance; and the question is whether the facts and circumstances proven justify a finding that such care and maintenance were furnished and accepted with the intention on the part of Dr. Johnson to charge for it and on her part to pay for it. To overcome the presumption arising from the situation and relationship of the parties, it must appear not only that Dr. Johnson furnished the support with the intention of charging for it, but also that Mrs. Anderson accepted it with the understanding that she was to pay for it. See the exhaustive note in 11 L. R. A. (N. S.) 873, and especially subdivision XI at page 899, and the following subdivisions.

Mrs. Anderson was an active, energetic woman and managed her own affairs, but after her injury she usually had Dora attend to such matters as going to the bank to make deposits or draw out money, and this practice continued after she became an inmate of Dora's home. In this manner her funds usually passed through Dora's

hands.   While an inmate of Dora's home she was never requested to perform any services, but of her own volition she busied herself in performing the minor household duties which she was able to perform.   She occasionally made gifts to Dora, but when she did so she usually made a similar gift to her other daughter, Minnie.   At the time of his marriage Dr. Johnson was a young physician and surgeon in quite moderate circumstances.   He rented and furnished a lower duplex where they lived until he built a house of his own some 4 years later.   When he built this house, he borrowed $3,000 from Mrs. Anderson for which he gave her a promissory note dated October 1, 1914.   He made two payments on this note, one of $67 on May 12, 1916, and another of $1,100 on May 12, 1917.   He never asked any payment from her for her care or maintenance and she never made any payment therefor.

Dora was a witness for her husband and stated that her mother had mentioned the matter of compensation.   Asked what her mother had said in regard to compensation she replied:   "She just said she would make it right with me because I had her living with me." Asked if anything was said as to how or when her mother was going to make it right, she answered:   "Why, no, she just said she would make it right with me.   I didn't know just when that would be." Dora was unable to state the year in which this conversation took place, but knew that it was after they had removed from the duplex into their own house.   It is certain, therefore, that this statement was made more than 4 years after Mrs. Anderson became an inmate of the household and not as an inducement to receive her as such inmate.   Instead of indicating the existence of a contractual obligation to pay for her accommodations, it indicates that she understood that giving compensation therefor would be her voluntary act.   If Mrs. Anderson was under an obligation to pay for her support, she owed Dr. Johnson more than $2,500 at the time he borrowed $3,000 from her and gave her his promissory note for it.   It is universally recognized that the execution of a promissory note creates a presumption that the payee is not indebted to the maker, and this presumption is especially strong where the note is given for borrowed money with no suggestion that a liability of any kind exists against

the lender. Beneke v. Beneke, 119 Minn. 441, 138 N. W. 689, Ann. Cas. 1914B, 381, and note appended to report of this case in Ann. Cas. 384.

The fact that Mrs. Anderson was not dependent upon her relatives for support and that Dr. Johnson was a man of limited means when she went to live in his household, may incline us to feel that she ought not to have imposed upon him the burden of supporting her without compensation, but these matters when considered in connection with the conduct of the parties are not sufficient to overcome the presumption that she was under no legal obligation to pay for such support. Knight v. Martin, 124 Minn. 191, 144 N. W. 941, and cases there cited.

· We find nothing in the record which will justify a finding that, while Mrs. Anderson lived with her daughter and son in law as a member of the family, it was mutually understood that she was to pay for her care and maintenance. To establish such a claim, first made after her death, the evidence must be convincing and satisfactory. It must go far enough to show that she had recognized the existence of a contractual obligation to pay for what she received. We are constrained to hold that the evidence fails to establish any legal liability against her and the judgment must be and is reversed.

On February 14, 1924, the following opinion was filed:

PER CURIAM.

The decision in this cause reversed the judgment for the plaintiff, but contained no directions as to future proceedings. Defendant applied for a reargument on the ground that this court should have directed judgment in her favor. A reargument limited to this question was granted. After considering the briefs filed by the respective parties, together with the record, we are satisfied that another trial would merely entail needless expense and that judgment should be rendered for defendant. It is so ordered.